FILED
2012 Jul-25  PM 04:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **MARY A. CANNON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:11-CV-2022-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## <u>MEMORANDUM OPINION</u>

Mary Cannon ("Ms. Cannon") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. She seeks review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for supplemental security income ("SSI").[1] Ms. Cannon timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review under 42 U.S.C. § 405(g),[2] § 205(g) of

---

[1]  In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI).  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

[2]  42 U.S.C. § 1383(c)(3) renders the judicial review provision of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

the Social Security Act.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Cannon was 50 years old at the time of her hearing before the administrative law judge ("ALJ"). (Tr. 82). She completed the tenth grade (Tr. 163), and later received her GED. (Tr. 98). Her past work experiences include employment as a fast-food chain store manager, commercial cleaner, and box packager. (Tr. 19, 41). Ms. Cannon claims she became disabled on February 28, 2001, due to leg swelling and aching, arthritis in her hands and feet, knots atop her feet, sleeplessness, swelling in her hands and arms, and a history of carpel tunnel syndrome and surgery in her left hand resulting in loss of strength.

Ms. Cannon filed her application for SSI benefits on March 22, 2007. (Tr. 120). It was denied on July 27, 2007. (Tr. 121). The Social Security Administration received Ms. Cannon's request for a hearing on September 26, 2007 (Tr. 126), and that hearing was held on April 22, 2009. (Tr. 128). Following that hearing, the ALJ concluded that Ms. Cannon was not disabled and denied her application on June 8, 2009. (Tr. 21). After having her request for review denied by the Appeals Council (Tr. 1), Ms. Cannon filed this action seeking review of the ALJ's decision. (Doc. 1). This court has carefully considered the record and, for the reasons stated below, reverses the Commissioner's denial of benefits, and remands the case for further

development and consideration.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance."  *Id*.  Factual findings that are supported by substantial evidence must be upheld by the court.  The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the

ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through July 5, 2012.

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the Secretary;

(4)     whether the claimant can perform her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job."  *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Id*.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Ms. Cannon had not engaged in substantial gainful activity since her application date of March 22, 2007. (Tr. 14). The ALJ then determined Ms. Cannon was suffering from several severe impairments, and specifically listed hypertension, obesity, history of carpel tunnel syndrome, a history of fracture of the 5th right metatarsal (*i.e.*, a foot fracture), and depression

disorder. (*Id.*) The ALJ also noted that Ms. Cannon had recently been diagnosed with diabetes mellitus, but found that condition to be non-severe. (*Id.*).

The ALJ determined that these impairments, when considered individually or in combination, did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Ms. Cannon does not contest this particular finding on appeal.

Next, the ALJ considered Ms. Cannon's residual functional capacity ("RFC"), and found that:

> [T]he claimant has the [RFC] to perform light work (defined as requiring lifting/carrying up to 20 pounds occasionally and up to 10 pounds frequently, or either involving a good deal of standing/walking or  pushing/pulling of arm or leg controls) as defined in 20 C.F.R. 416.967(b) except that: she cannot climb ladders/ropes/scaffolding; she needs to avoid concentrated exposure to extremes of cold/heat; she cannot no [sic] work at unprotected heights or around dangerous/moving/unguarded machinery; psychological factors restrict her to unskilled work (that is simple, routine, repetitive work with no more than 1-2 step instructions or tasks); she is also limited to occasional contact with supervisors, coworkers and the general public.

(*Id.* ).

In support of his RFC determination, the ALJ gave little weight to the physical capacities evaluation of Ms. Cannon (Tr. 362) performed by her treating physician, Dr. Stephen A. Branning ("Dr. Branning"). (Tr. 18)("The undersigned gives little weight to most of Dr. Branning's April 14, 2009 assessment forms.").

Based upon his medical assessment, Dr. Branning determined that Ms. Cannon "could not lift and/or carry more than 10 pounds occasionally, could not do any sitting, standing or walking in an 8-hour day, and could never do any pushing/pulling, climbing, balancing, or gross or fine manipulation." Additionally, Dr. Branning's physical capacity evaluation indicated "that [Ms. Cannon] could only occasionally bend, stoop, and reach, and could not work around hazardous machinery or dust/allergens/fumes, etc." (Tr. 362).

As an additional factor in making his RFC determination, the ALJ stated that he gave "more weight to the state agency medical consultant opinion in July 2007 that the claimant could perform a wide range of medium work (Exhibit B8F) [*i.e.*, Tr. 245] than to Dr. Branning's April 2009 assessments." (Tr. 18). The ALJ did, however, note that the state agency medical consultant had never examined or treated Ms. Cannon, but, nevertheless, concluded that the consultant's assessment was "more consistent with the record as a whole." (*Id.*).

Regarding Ms. Cannon's mental functioning, the ALJ gave little weight to the results of the consultative psychological examination performed by John R. Haney, Ph.D. ("Dr. Haney"). Rather, the ALJ gave great weight to the consultative medical examination conducted by Will R. Crouch, M.D. ("Dr. Crouch") and the opinion of the non-examining state agency medical consultant. (Tr. 19).

Against this backdrop, the ALJ concluded that Ms. Cannon could not perform her past relevant work, which was more strenuous than her residual functional capacity permitted.  (Tr. 19).  Because of this, the ALJ then had to proceed to the fifth prong of the sequential analysis, and determine whether the claimant was capable of performing any jobs in the national economy.

In the final step, the ALJ considered Ms. Cannon's residual functional capacity, age, education, and work experience, and determined that there are a significant number of jobs in the national economy that Ms. Cannon is capable of performing.  (Tr. 20).  Relying on the expertise of a vocational expert, the ALJ provided examples of such jobs, including packing line worker, nut and bolt assembler, and garment sorter.  (Tr. 20).  Accordingly, the ALJ concluded Ms. Cannon was not disabled  as defined by the Social Security Act, and denied her SSI claim. (Tr. 21).

## ANALYSIS

The court must review the Commissioner's findings of fact with deference, but may reverse when those findings are not supported by substantial evidence. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)).  In making that determination, the court "must scrutinize the record as a whole to determine if the decision reached is

reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)).   Ms. Cannon argues that the ALJ's findings were not supported by substantial evidence because the ALJ "substitut[ed] his own judgment for that of the her treating physician Dr. Stephen A. Branning and the ALJ's own disability determination service consultative psychologist, Dr. John R. Haney." (Doc. 8 at 10). Upon review, the court finds that the ALJ's disability decision is not supported by substantial evidence, and remands the case for further development and consideration.

## I.   THE ALJ'S DISABILITY DETERMINATION IS DEFICIENTLY SUPPORTED.

In this appeal, Ms. Cannon primarily asserts that the ALJ substituted his own judgment for that of Ms. Cannon's treating physician, Dr. Branning, and the consulting psychiatrist, Dr. Haney, and that in doing so, he committed reversible error.   Generally, the Eleventh Circuit has held that "[a]n ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians."   *Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992).

Regardless of the merits of this particular contention, the court finds that the ALJ's disability determination is not supported by substantial evidence because of the lack of an underlying medical opinion by a physician in support of the ALJ's

RFC determination that Ms. Cannon is capable of performing light work with additional restrictions given her collection of severe physical and mental impairments and her non-severe diabetes. Accordingly, the court agrees with Ms. Cannon that, under the circumstances of her case, the ALJ committed reversible error.[4]

> **A.    In the absence of a supporting medical source statement or a physical capacities evaluation by a physician that considers the impact of Ms. Cannon's collection of severe impairments and her non-severe diabetes, the ALJ's physical RFC determination that she can perform a reduced range of light work is not supported by substantial evidence.**

The court has been unable to locate a medical source opinion[5] or a physical capacities evaluation conducted by a physician (and relied upon by the ALJ) that substantiates Ms. Cannon is capable of performing a reduced range of light work given her severe physical impairments of hypertension, obesity, carpal tunnel syndrome, and a foot fracture as well as her non-severe diabetes. As the undersigned has observed on numerous occasions, "[s]uch an omission from the

---

[4]  As a result, the court does not reach the merits of the other issues presented on appeal.

[5]  Medical source statements are "medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about which an individual can do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis. Medical source statements are to be based on the medical sources' records and examination of the individual; i.e., their personal knowledge of the individual. Therefore, because there will frequently be medical and other evidence in the case record that will not be known to a particular medical source, a medical source statement may provide an incomplete picture of the individual's abilities." SSR 96-5p.

record is significant to the substantial evidence inquiry pertaining to the ALJ's RFC determination."   *See, e.g.*, *Cole-Smith v. Astrue*, No. 2:11-CV-2857-VEH, 2012 WL 1946766, at *5 (N.D. Ala. May 29, 2012) (citing *Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("The ALJ failed to refer to—and this Court has not found—a proper, medically determined RFC in the record.")).

As another district judge of this court aptly explained the RFC issue in the context of an ALJ who comparably determined, without the benefit of a physical capacities evaluation conducted by a physician, that the claimant was not disabled:

> While the Record contains Ms. Rogers'[s] medical treatment history, <u>it lacks any physical capacities evaluation by a physician</u>. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation.   <u>An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person</u>. *Manso–Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir.1996).   <u>In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required. *Id.* In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted Ms. Roger's [sic] physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations</u>.   Further, Ms. Rogers'[s] ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician.   These evaluations shall be obtained upon remand. Ms. Rogers'[s] residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06–CV–0153–JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso–Pizarro*, 76 F.3d at 17 ("With a few

exceptions (not relevant here), <u>an ALJ, as a lay person, is not qualified to interpret</u> <u>raw data in a medical record</u>." (emphasis added) (citing *Perez v. Sec'y of Health &* *Human Servs.*, 958 F.2d 445, 446 (1st Cir.1991))); *Rohrberg*, 26 F. Supp. 2d at 311 ("<u>An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical</u> <u>findings</u>, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." (emphasis added) (citing *Rodriguez v. Sec'y of Health & Human Servs.*, 893 F.2d 401, 403 (1st Cir. 1989))); *cf. Giddings v. Richardson*, 480 F.2d 652, 656 (6th Cir. 1973) ("To meet such a *prima facie* case <u>it is not sufficient for the government to rely upon</u> <u>inconclusive medical discussion of a claimant's problems without relating them to</u> <u>the claimant's residual capacities in the field of employment</u>.") (emphasis added).

Thus, when an ALJ makes an RFC determination about a claimant, who, like Ms. Cannon, has a complex medical history and who suffers from several severe impairments, without the benefit of a supporting medical source statement or a physical capacities evaluation, he risks substituting his own medical judgment for that of a physician, and, regardless, lacks substantial evidence to support his disability determination.

### 1.    Dr. Branning's Physical Capacity Evaluation

Against the above analysis, the ALJ could not have used Dr. Branning's

physical capacity evaluation (Tr. 362) to make his RFC determination because he specifically discounts that opinion. In particular, the ALJ found that Dr. Branning's assessment was inconsistent with the medical records as a whole.   Additionally, Dr. Branning concluded differently than the ALJ that Ms. Cannon was physically capable of performing light exertional work. Therefore, such medical documentation cannot constitute substantial evidence in support of the ALJ's  RFC determination.

### 2.    Dr. Carmichael's Physical Summary

The ALJ also cannot point solely to the physical summary supplied by R. Glenn Carmichael ("Dr. Carmichael"), a non-examining state agency consultative physician, to support his RFC determination.  (Tr. 245).  After conducting a paper review, Dr. Carmichael concluded on July 26, 2007, that Ms. Cannon could perform medium work "with safety precautions [and avoiding] excessive heat and cold.  (*Id.*).  In formulating his RFC for Ms. Cannon, the ALJ indicated that he "[gave] more weight to the state agency medical consultant opinion . . . (Exhibit B8F)." (Tr. 18).

One problem with the ALJ's reliance upon this summary is that Dr. Carmichael's opinion does not reflect that he factored in the vocational impact of Ms. Cannon's foot fracture, an impairment the ALJ found to be severe.  Instead,

13

Dr. Carmichael identifies only Ms. Cannon's severe level II obesity, hypertension, and carpal tunnel syndrome in providing his exertional opinion.  (Tr. 245).

Another issue with Dr. Carmichael's assessment is that Ms. Cannon's diabetes diagnosis is not referenced.  Although the ALJ found this condition to be not severe, when determining disability "[t]he ALJ must consider the applicant's medical condition taken as a whole." *Jamison v. Bowen*, 14 F.2d 585, 588 (11th Cir. 1987); *see* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."); *cf. Jamison*, 14 F.2d at 588 ("At step three the ALJ must determine if the applicant has a severe impairment or a combination of impairments, <u>whether severe or not</u>, that qualify as a disability.") (emphasis added).

Finally, based upon the Eleventh Circuit's decision in *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987), the court questions whether a vocational opinion from a non-examining physician like Dr. Carmichael can constitute substantial evidence in support of an RFC finding.  *See Sharfarz*, 825 F.2d at 280 ("The only opinions that indicated that appellant could meet the medium work requirements of 20 C.F.R. 404.1567(c) (1986) were those of the nonexamining physicians, Drs.

14

Thomas and Register.  Their opinions were entitled to little weight, however, and could not serve as substantial evidence.") (emphasis added); *see also Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir.1985) (holding that "taken alone" the opinions of non-examining physicians "do not constitute substantial evidence on which to base an administrative decision").  Thus, akin to *Sharfarz* and *Broughton*, Dr. Carmichael's vocational opinion cannot constitute substantial evidence in support of the ALJ's physical RFC finding.

### 3.    Dr. Crouch's Medical Records

Dr. Crouch's medical records also do not provide sufficient detail regarding Ms. Cannon's exertional abilities to support the ALJ's RFC determination. (Tr. 221-23). As explained above, when a doctor's records contain only clinical findings and diagnoses that are not couched in terms of a claimant's exertional abilities, then, as a general proposition, the ALJ does not have the expertise to formulate an RFC based on those bare medical records.

Here, none of Dr. Crouch's documents includes an opinion about Ms. Cannon's impairments in vocational terms, attaches a physical capacities evaluation of her, or otherwise unambiguously suggests that she can perform a reduced range of light work. *See, e.g., Rohrberg*, 26 F. Supp. 2d at 311 ("Where the 'medical findings in the record merely diagnose [the] claimant's exertional

impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that connection himself.'" (quoting *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 292 (1st Cir. 1986))).

Instead, such records amount only to "raw physical findings" the caliber of which this court has previously found to be ineffective evidence for corroborating an RFC. *Cole-Smith*, 2012 WL 1946776, at *6. Like the medical records in *Cole-Smith*, the physical examination supplied by Dr. Crouch and seemingly relied upon by the ALJ does not provide an indication of how Ms. Cannon fits into the residual functional capacity scheme outlined in 20 C.F.R. § 404.1567.

For example, Dr. Crouch's written summary on Ms. Cannon's blood pressure, medication, height, weight, whether her "fundoscopic exam" reveals "hemorrhages, exudates, AV nicking, [or] pappilledema," and the extent of her "thyromegaly," (Tr. 222-23), does not give the ALJ a basis for determining Ms. Cannon's physical RFC. Although Dr. Crouch does address Ms. Cannon's range of motion in her wrists and ankles, her capacity to walk and squat, and her ability to get off and on the exam table (Tr. 223), such reporting is not the equivalent of a physical capacity evaluation that specifies a claimant's exertional abilities as they relate to 20 C.F.R. § 404.1567.

Dr. Crouch's reporting is particularly vague with regard to Ms. Cannon's ability to lift, the extent of her walking ability, and her capacity to push and pull. Comparable to *Cole-Smith*, *Rogers*, *Manso–Pizarro*, and other similar cases, a lay person such as an ALJ is not able to discern Ms. Cannon's work-related exertional abilities and appropriate non-exertional restrictions based upon the unfiltered information contained in her medical records.  Thus, because there was no suitable physical capacity evaluation or other medical documentation that relates Ms. Cannon's medical information to her functional abilities, the court finds that the ALJ must have erroneously made an RFC determination by interpreting the bare medical findings on his own.[6]

Moreover, the lack of a medically-determined physical RFC that supports the ALJ's RFC determination is particularly critical here when, undisputably, Ms. Cannon is not able to perform relevant past work given the additional job-related restrictions that the ALJ placed on her at the light exertional level.  As the undersigned has previously recognized in another fifth-step burden decision that similarly resulted in a remand for further development of the claimant's functional

---

[6] Alternatively, even if Dr. Crouch's medical records were sufficient to substantiate the ALJ's RFC determination, the ALJ still committed reversible error because he failed to state the weight that the gave to that examination as required by *Sharfarz*.  825 F.2d at 279 ("In assessing the medical evidence in this case, the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor. (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986))); *see also Gaught v. Astrue*, No. 6:11–CV–2681–VEH, 2012 WL 1745525 at *4-5 (N.D. Ala. May 14, 2012).

abilities:

> The Eleventh Circuit has held that the absence of a physician's opinion regarding a plaintiff's functional limitations does not morph into an opinion that the plaintiff can work. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir.1988). "Such silence is equally susceptible to either inference, therefore, no inference should be taken." *Id.*

*Clemmons v. Barnhart*, No. 3:06–CV–1058–VEH, (Doc. 22 at 11) (N .D. Ala. June 11, 2007); *cf. Reeves v. Heckler*, 734 F.2d 519, 522 n.1 ("It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." (citing *Ford v. Sec'y of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981) (Unit B))).[7]

Therefore, in the absence of a medical source statement and/or any physical capacities evaluation conducted on Ms. Cannon by a physician that corroborates the ALJ's determination that she is capable of performing light work with certain non-exertional restrictions despite her physical impairments of (i) severe hypertension; (ii) severe obesity; (iii) severe carpal tunnel syndrome; and (iv) non-severe diabetes, the record has not been adequately developed. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to

---

[7] In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit adopted as binding precedent all decisions of the Unit B panel of the former Fifth Circuit handed down after September 30, 1981.

the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.").

Likewise, the ALJ's determination that Ms. Cannon can perform light work with certain non-exertional restrictions is not supported by substantial evidence. Accordingly, the decision of the Commissioner is due to be reversed, and the case remanded for further proceedings consistent with this memorandum opinion.

### B.    The ALJ's Mental RFC Determination Is Also Deficiently Supported.

In addition to her severe physical impairments, the ALJ also determined that Ms. Cannon suffers from severe depression.  In conducting a consultative mental examination of Ms. Cannon, Dr. Haney, a specialist, opined that she "appeared quite depressed" and that her "ability to function in most jobs appeared moderately to severely impaired due to the patient's physical and emotional limitations."  (Tr. 226).  Regarding Ms. Cannon's work-related restrictions relating to her depressive condition, the ALJ disregarded Dr. Haney's findings over Dr. Crouch's medical examination and the mental residual functional capacity assessment provided by a state agency medical consultant, Aileen McAlister, M.D. ("Dr. McAlister") on July 17, 2007. (Tr. 241-44). In Dr. McAlister's report, she opined that Ms. Cannon was not significantly limited in most areas of mental functioning or only just moderately limited in others.  (Tr. 241-42).

19

The ALJ's reliance upon Dr. Crouch's report to substantiate the vocational impact of Ms. Cannon's severe depression is flawed for the same reasons that the court found it to be inadequate to sustain the ALJ's physical RFC finding–Dr. Crouch's raw physical findings are not the equivalent of a functional assessment of Ms. Cannon's mental abilities.  Indeed, there is no indication that Dr. Crouch ever even considered Ms. Cannon's severe depression as a diagnosis, much less its impact in vocational terms.

In crediting the opinion of Dr. McAlister over that of Dr. Haney, the ALJ indicated that he gave "great weight to the state agency medical consultant opinion in July 2007 that the claimant had no more than moderate mental restrictions since it is compatible with the record." (Tr. 19). The ALJ provided no explanation of why he found Dr. McAlister's assessment to be "compatible with the record."

As the Eleventh Circuit explained in *Sharfarz*:

In assessing the medical evidence in this case, the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986). Further, he was required to accord considerable weight to appellant's treating physician's opinion absent good cause for not doing so. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir.1985) (per curiam). The opinions of nonexamining, reviewing physicians, such as those of Drs. Thomas and Register, when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence. *See Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (per curiam). Of course, the ALJ may reject any

medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir.1985) (per curiam).

825 F.2d at 279-280 (emphasis added).

The court concludes that the ALJ's assignment of more weight to the opinion of Dr. McAlister runs afoul of *Sharfarz* because, after obtaining the results of the consultative examination that he ordered to develop the record further, his decision to favor the prior opinion by Dr. McAlister lacks any elaboration,[8] and as an opinion in conflict with the examining one completed by Dr. Haney, it is entitled to "little weight." Additionally, under *Sharfarz*, the opinion of Dr. McAlister cannot constitute substantial evidence.

Furthermore, having disregarded Dr. Haney's opinion, no other functional proof provided by a physician exists in the record to corroborate the ALJ's mental RFC determination for Ms. Cannon. Therefore, the disability decision of the ALJ is alternatively due to be remanded because the ALJ's mental RFC finding for Ms. Cannon is deficiently supported.

## **CONCLUSION**

---

[8] While an ALJ is not obligated to "specifically refer to every piece of evidence in his decision," *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005), here, some pinpointing of evidentiary support is needed for the court to verify whether substantial evidence supports the ALJ's assignment of weight to the medical opinions contained in the record. *Cf. Popock v. Astrue,*374 Fed. App'x, 903, 905 (11th Cir. 2010) ("Furthermore, the ALJ offered no explanation for his decision to adopt the consultants' assessment over Dr. Griscom's, except to say that Dr. Griscom's assessment was 'slightly more restrictive than warranted.'").

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, this court finds that the Commissioner's final decision is not supported by substantial evidence. Accordingly, the decision of the Commissioner will be remanded by separate order.

**DONE** and **ORDERED** this the 25th day of July, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge